U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

OCT 0 3 2008

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 03-50033-03<br>CIVIL NO. 06-0411 |
| VERSUS | JUDGE DONALD E. WALTER |
| REGAN GATTI | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before this Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence filed by defendant, Regan Gatti. For the following reasons, **IT IS ORDERED** that defendant's § 2255 motion be **DENIED IN PART,** and an evidentiary hearing is ordered with respect to the following claims of ineffective assistance of counsel: (1) alluding to a "bogus theory of defense" during opening statements; (2) failure to offer expert testimony regarding Larry Thompson, Sr.'s over-bearing and controlling personality; (3) failure to fully investigate Larry Thompson, Sr.'s reputation for violence and to present additional testimony concerning that reputation; (4) representation of defendant despite an actual conflict of interest; and (5) failure to appeal the error in the loss amount calculation. *See* Record Document 318, Claims 6-7; Record Document 355, Claims 1, 2, 11, 17. All other claims for relief in defendant's motion are denied.

## STATEMENT OF THE CASE

On March 13, 2003, at approximately 9:30 a.m., two armored cars were robbed while making a delivery at the Hibernia Bank in Shreveport, Louisiana. Four men, armed with AK-47 assault rifles and semi-automatic handguns, emerged from a Suburban dressed in black, wearing ski masks and gloves. The robbers ordered the guards to the ground and stole $780,000 cash from the armored

cars.

After taking the cash, the robbers ordered the guards to get into the Suburban, which was being driven by co-defendant Larry Neal Thompson, Sr. The robbers placed handcuffs on the guards and transferred the money into duffle bags as they drove to a nearby apartment complex where Larry Neal Thompson, Jr. was waiting in a green van. They transferred the money to the van, doused the Suburban with gasoline, and drove off in the van. Residents of the apartment complex who observed the suspicious activity called 911 and provided them with the license plate number of the green van.

Shreveport City Police Office Mark Sharbano, who was traveling in a marked squad car, saw the van traveling east on the interstate towards Bossier City. As he pursued the van, one of the robbers blew out the back window of the van and began firing. Officer Sharbano was shot in the left arm and forced to pull over to allow another police officer who had joined the chase continue to pursue the robbers.

The van drove across the interstate into Bossier City and proceeded into a residential neighborhood where Larry Thompson, Jr. drove the van into an open garage. The robbers got out of the van and tried to enter the home, but the homeowner locked the door, armed himself with a handgun, and began shooting at them through the door. The robbers then fled the garage and disbursed into the neighborhood. Two of the robbers, including defendant, entered the home of William Walker and demanded the keys to his car. When the police approached the house, the robbers ran into the backyard. The police ordered them to stop, but they jumped a fence into another yard and continued running.

Defendant Regan Gatti ("Gatti") eventually encountered Shreveport City Police Officers Willis and Creighton in the backyard of another home in the neighborhood. Officer Willis ordered

Gatti to his knees. When he was ordered to lay down on his stomach, Gatti reached for his gun. Officer Willis fired as defendant jumped to his feet and began running again. An exchange of gun fire ensued between the two officers and defendant as he tried to escape.

Defendant then ran into another home and called Larry Thompson, Sr.'s cell phone. Thompson, Sr. had already been apprehended and an officer used the cell phone to call defendant back. Defendant answered the phone and made arrangements with the officer to come out of the home and surrender.

On March 27, 2003, a federal grand jury returned a four-count indictment against Larry N. Thompson, Sr., Larry Neal Thompson, Jr., Regan Gatti, Nicholas B. Gentry, Anthony R. Gentry, and Tung Nguyen. (Record Document 61). The indictment charged each of the men with: (1) conspiracy to "knowingly use and carry, and possess" firearms in furtherance of robbing an armored car, in violation of 18 U.S.C. § 924(o); (2) robbery of a bank in violation of 18 U.S.C. §§ 2113(a) and (d), and 2; (3) knowingly using and carrying firearms "during and in relation to a crime of violence," in violation of 18 U.S.C. §§ 924(c)(1)(A)(i)-(iii) and 2; and (4) knowingly possessing stolen firearms in violation of 18 U.S.C. §§ 922(j) and 2.

At trial, Gatti, who was represented by attorney Daryl Gold, asserted a defense of duress. Gatti claimed that Larry Thompson, Sr., was a well-known criminal and had a reputation for being a "hit man." Gatti testified that he was cooperating with the FBI to extricate himself from some minor criminal charges, and that an FBI agent requested information concerning Thompson, Sr.'s criminal activity. In order gain favor with Thompson, Sr., Gatti claimed that he agreed to participate in a car theft. He stated that it was only the morning of the robbery that Thompson, Sr. informed him that they were going to rob an armored car. Gatti claims that when he protested the robbery, he was

3

threatened by Thompson, Sr. who told him: "Pick a spot by the side of the road and that's where I'll leave you at." (Rec. Doc. 355, p.3-4).

On October 3, 2003, a jury found Gatti guilty on all four counts. On February 20, 2004, he was sentenced to 240 months as to Count One, 165 months as to Count Two, and 120 months as to Count Four, all of which were to run consecutively. He was also sentenced to a term of 120 months as to Count Three, which was to run concurrently to Counts One, Two, and Four. Thus, the total imprisonment imposed was 525 months. (Rec. Doc. 188).

After his conviction, Gatti appealed to the Fifth Circuit, but to no avail. On January 10, 2005, the Fifth Circuit issued as mandate a judgment affirming the conviction and sentence of defendant. In his final effort to attack his conviction and sentence, Gatti has filed with this court a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence (Rec. Doc. 318) and a pro se supplemental memorandum in support of his § 2255 motion (Rec. Doc. 355).

## LAW AND ANALYSIS

After conviction and exhaustion of a defendant's right to appeal, a court is "entitled to presume that the defendant stands fairly and finally convicted." *U.S. v. Shaid*, 937 F.2d 228, 231-32 (5th Cir. 1991) (quoting *U.S. v. Frady*, 456 U.S. 152, 164, 102 S.Ct. 1584, 1592 (1982)). To quote the Supreme Court, "[o]ur trial and appellate procedures are not so unreliable that we may not afford their completed operation any binding effect beyond the next in a series of endless post conviction collateral attacks. To the contrary, a final judgment commands respect." *Frady* at 164-65, 1593. Consequently, issues that can be presented in a motion filed under 28 U.S.C. § 2255 are limited. A defendant can challenge a final conviction only on issues of constitutional or jurisdictional

magnitude. *Shaid* at 232. As the Fifth Circuit has stated:

> Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

*U.S. v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them. In order to raise an issue for the first time on collateral review, a defendant must show both "cause" for his procedural default and "actual prejudice" resulting from the error. *Id.* at 168. To establish "cause," defendant must show some external impediment prevented him from raising the claim on direct appeal. *See U.S. v. Flores*, 981 F.2d 231, 235 (5th Cir. 1993). In order to meet the "actual prejudice" test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *Shaid*, at 233.

A narrow exception exists in extraordinary cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 232. The Supreme Court has emphasized that this exception is limited to only those cases involving "manifest miscarriages of injustice" that would result in the continued incarceration of an innocent person. *Id.* (citing *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2649 (1986). In the present case, defendant Gatti has not alleged nor sought to establish his innocence. Thus, the proper standard of review for his § 2255 motion is the "cause and actual prejudice" test.

**A.     Claims Not Cognizable Under § 2255**

5

Gatti alleges that the trial court placed the burden of persuasion with respect to the duress defense on the defendant in violation of the United States Constitution and the federal common law, that the admission of Officer Willis' in-court identification of defendant violated his constitutional right to due process, and that prosecutorial conduct violated his constitutional rights to due process and a fair trial. *See* Rec. Doc. 355, Claims 4-10. However, Gatti has failed to establish "cause" for failing to raise any of these claims on direct appeal. As a result, these claims are not properly cognizable under a § 2255 motion. Nevertheless, in an abundance of caution, the court will proceed to address the merits of these claims.

1. **Burden of Proof on "Duress" Defense**

In *Dixon v. United States*, 548 U.S. 1, 126 S.Ct. 2437 (2006), the Supreme Court held that jury instructions placing the burden of proof on the defendant to establish a duress defense by a preponderance of the evidence were proper. Neither the Constitution nor the common law places the burden of an affirmative defense on the government. Rather, the general evidentiary rule places both the burden of production and of persuasion on any given issue to the same party. In the context of the affirmative defense of duress, the general rule accords with the doctrine that "where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden or proving the issue." *Id.* at 9, 2443.

At trial, the court instructed the jury pursuant to the Fifth Circuit Pattern Jury Instructions which properly require defendant to prove his defense of duress by a preponderance of the evidence. *See* Trial Tr. at 566-67. Thus, the district court did not err in placing the burden of proof on defendant.

Gatti further contends that the jury instructions were improper because the unanimity

instruction followed the duress instructions. However, challenges to jury instructions are reviewed for the determination of whether the court's charge, as a whole, constitutes a correct statement of the law and clearly instructs the jurors as to the principles of law applicable to the specific factual issues before them. *U.S. v. Nelson*, 242 Fed. Appx. 164 (5th Cir. 2007). A district court has broad discretion in framing the instructions to the jury and should not be reversed unless the instructions, taken as a whole, incorrectly describe the issues and the law. *U.S. v. McKinney*, 53 F.3d 664 (5th Cir. 2005).

The instructions given to the jury at Gatti's trial did not incorrectly describe the factual issues or the applicable principles of law. Rather, the instructions were precise and clearly distinguished the unanimity instruction from the duress instruction. Thus, Gatti cannot establish "actual prejudice" as to this claim.

### 2. In-Court Identification

Gatti never denied that he was the person involved in the charges of which he was convicted. He argues that Officer Willis' identification of him, rather than Tung Nyugen, as the shooter was impermissibly suggestive and resulted in misidentification. *See* Rec. Doc. 355, Claim 4. Gatti contends that Officer Willis was affected by suggestive procedures occurring pre-trial[1] and at the trial[2] which resulted in the misidentification of Gatti as the shooter. Gatti cites *Neil v. Biggers*, 93

---

[1] Gatti contends that Officer Willis attended several meetings, the purpose of which were "not to question Officer Willis as to what he saw, but rather to 'discuss' the events of what happened there." (Rec. Doc. 355, p.28). Additionally, Gatti claims Officer Willis was affected by the news media which repeatedly showed pictures of Gatti and reported that he was the shooter. *Id.* at p.29.

[2] Gatti contends that the following exchange between the prosecutor and Officer Willis was suggestive:
Q: And were you present when the defendant in this case, Regan Gatti, was taken out

7

S.Ct. 375, 382 (1972), which sets forth five factors to consider when determining the likelihood of misidentification: (1) the witness's opportunity to observe the criminal at the time of the crime, (2) the witness' degree of attention, (3) the accuracy of the witness' prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Applying these factors, it is clear there was little likelihood of misidentification. At the crime scene, Officer Willis came face to face with Gatti and was able to recall the defendant's eyes as being dark and recessed. During the direct examination, when asked to identify the shooter, Officer Willis pointed to defendant without hesitation and without even a hint of doubt. These factors, when considered together with the relatively short period of time between the robbery and the trial and the reliability of Officer Willis' remaining testimony, make it clear that Gatti has not suffered "actual prejudice" such that his entire trial was infected with an error of constitutional dimension. *See U.S. v. Shaid*, 937 F.2d 228, 233 (5th Cir. 1991).

### 3. Prosecutorial Conduct

Gatti makes several allegations of prosecutorial misconduct. He contends that the prosecutor commented on the exercise of his right to counsel, that the government referred to the defense

---

        of the house?
A:    I was in the yard behind the house, I wasn't there during his actual arrest, No.
Q:    Okay, do you - have you had an opportunity to - do you know what the defendant looks like?
A:    Yes, I do.
Q:    Do you see him in the courtroom today?
A:    Yes, I do.
Q:    Could you point to where he is, please?
A:    He's on the end of the table over here, wearing the black suit.
(Rec. Doc. 355, p.30).

counsel's performance, that the prosecutor's cross-examination of defendant was improper, and that the prosecutor alluded to testimony and evidence during the closing that had not been introduced at trial, all in violation of his constitutional rights to due process and a fair trial. *See* Rec. Doc. 355, Claims 6, 8, and 9. As mentioned above, defendant has failed to establish "cause" for his failure to bring any of these claims on direct appeal. Nevertheless, even if he was able to establish cause, he cannot show "actual prejudice" as to these alleged errors.

First, Gatti contends the following exchange constitutes a comment on the exercise of defendant's right to counsel:

> Q: Alright, now today, you say you're telling the truth?
>
> A: Yes, sir.
>
> Q: But you've never told this before, correct?
>
> A: I never got a chance to.
>
> Q: Well, wait a minute. You've had plenty of opportunities since March to tell the police, "hey, I had to do this," right?
>
> A: No, sir. I've had no opportunities.
>
> Q: You've been in jail; you could call, pick up the telephone and call anybody you wanted to.
>
> A: The way it works, you have to call your lawyer to get in contact with you. I tried to tell you this on a lot of times, many times. And my first attorney, Randall Robinson, you know, didn't he try to get in touch with you about me—
>
> Q: So now it's the lawyer's fault that you haven't been able to tell anybody about this story?
>
> A: Do you - does - I just didn't get a chance to talk to you. I wish I could have.
>
> Q: But it must have been the lawyer's fault, is that what you're saying?

9

Rec. Doc. 355, p.37-38 (citing Trial Tr. p.440-41).

The Due Process Clause of the Fifth and Fourteenth Amendments prohibits impeachment of a defendant's exculpatory story, told for the first time at trial, by using the defendant's post-arrest silence. *Doyle v. Ohio*, 424 U.S. 610, 619, 96 S.Ct. 2240, 2245 (1976). The government contends that inquiry was not directed towards Gatti's post-arrest silence. In *United States v. Rodriguez*, 43 F.3d 117 (5th Cir. 1995), the Fifth Circuit addressed this situation:

> [T]he instant prosecutor's questions were sufficiently broad as to be construed as commentary on Rodriquez' failure to come forward with his alibi (1) prior to arrest, (2) immediately after arrest and *Miranda* warnings (the classic *Doyle* violation), and (3) during the time period prior to trial but following his arrest (the non-classic *Doyle* violation). The *Doyle* protection derives primarily from the implicit assurance of the *Miranda* warnings and thus is strongest in the classic *Doyle* context of immediate post-*Miranda* warning interrogation.
>
> Rodriguez does not specifically argue that the period in question is immediately following his arrest and *Miranda* warnings, and the record does not indicate that Rodriguez was Mirandized or that there was any government-induced silence. For these reasons, we deem the relevant period to be the time prior to trial but following his arrest...

*Id.* at 122. Similarly, Gatti does not argue that the prosecutor inquired into the period following his *Miranda* warnings. In fact, he does not even argue, nor does the record indicate, that he was Mirandized or that he was under any government-induced silence. Although it can reasonably be assumed that Gatti did receive *Miranda* warnings at some point, the questions asked by the prosecutor did not segment the time period into before and after the *Miranda* warnings. *See U.S. v. O'Brien*, 435 F.3d 36 (1st Cir. 2006). The jury would not have construed all of the questions as references to post-*Miranda* silence, particularly since there was no indication of when Gatti received his *Miranda* warnings. Thus, Gatti has failed to meet his burden of proving that the sole purpose of the inquiry was to comment upon his post-arrest silence and therefore cannot show "actual

prejudice" resulting for the prosecutor's comments. *See Rodriguez, infra* at 121.

Secondly, Gatti contends that the above colloquy also constitutes comments on defense counsel's performance in violation of his constitutional right to a fair trial.[3] However, the prosecutor's questions did not refer to the defense counsel's performance. Rather, the prosecutor's comments were made only after Gatti answered that he attempted to speak to his defense counsel. The prosecution's inquiry was a proper line of follow-up questions to Gatti's response.

Third, Gatti contends that the prosecutor's cross-examination of him was improper. *See* Rec. Doc. 355, Claim 9. Specifically, Gatti claims the following exchange was improper:

> Q: Okay, isn't it true that you told your cellmate this summer, a man by the name of Kenneth Merritt, that you were in that shoot-out with police because you wanted to go down fighting and take a bunch of cops with you?
>
> A: No, sir.
>
> Q: And, isn't it true you told that cellmate that the only reason you stopped shooting was because your hand was hurting; isn't that right?
>
> A: No, sir.

(Trial Tr. at 458).

Gatti's claim is without merit. Federal Rule of Evidence 608(b) allows specific instances of conduct to be inquired into on cross-examination "if probative of truthfulness or untruthfulness." The questions posed by the prosecutor were related to the defendant's character for truthfulness and permissibly designed to impeach his credibility. *See* Fed. R. Evid. 607.

In his last attempt to establish prosecutorial misconduct, Gatti alleges that during closing arguments the prosecutor improperly alluded to testimony and evidence which had not been

---

[3]Gatti specifically refers to the prosecutor's comment, "But it must have been the lawyer's fault; is that what you're saying?" (Trial Tr. at 411).

introduced during the trial. *See* Rec. Doc. 355, Claim 9. Gatti argues that there was no evidence to support the following statement: "I submit to you he went into Mr. Walker's house, held a 93-year-old woman at gunpoint, knocked—he and Tung Nguyen knocked down Mr. Walker, wanted to get his car keys, didn't, panicked, ran through next door in Mr. Cyr's yard." (Trial Tr. at 543). During the trial, William Walker testified that when he walked into his garage after picking weeds and attempted to enter his home, he was confronted by two men inside the door who demanded his car keys. One of the men pointed a gun at him, grabbed him, and again demanded keys to the car. He also testified that about that time his 93-year-old mother-in-law was getting out of the shower and came to him "wide-eyed" and confused. (Trial Tr. at 166-67).

The courts have long recognized that "the proper function of the attorneys in closing argument is to assist the jury in analyzing, evaluating, and applying the evidence." *U.S. v. Thompson*, 482 F.3d 781 (5th Cir. 2007) (citations omitted). Attorneys are permitted to summarize the trial testimony and state their contentions as to the conclusions that the jury should draw from the evidence. The allegedly improper comment made by the prosecutor during his closing argument was merely a summation of Mr. Walker's testimony. This comment was neither impermissible, nor unreasonable, and therefore does not demonstrate "actual prejudice.

### B. Ineffective Assistance of Counsel

The general ruling prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel. *Massaro v. U.S.*, 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003). The procedural-default rule is a doctrine employed by the courts "to conserve judicial resources and to respect the law's important

interest in the finality of judgments." *Id.* Requiring a criminal defendant to bring ineffective assistance of counsel claims on a direct appeal promotes neither of these objectives. Moreover, a claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations. *U.S. v. Alanis*, 88 Fed. Appx. 15, 19 (5th Cir. 2004). Thus, a criminal defendant is properly permitted to bring ineffective assistance of counsel claims in a collateral proceeding under § 2255, regardless of whether such claims could have been raised on direct appeal. *Id.*

To prevail on his claims of ineffective assistance of counsel, Gatti must prove (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial. *See Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984); *Bryant v. Scott*, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the *Strickland* analysis, Gatti must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687, 2064. The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy. The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's performance was "outside the wide range of professionally competent assistance." *Id.* at 690, 2066.

Under the second prong of the *Strickland* test, the defendant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." *Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694, 2068.

13

The two prongs of the *Strickland* test need not be analyzed in any particular order. *See Goodwin v. Johnson*, 132 F.3d 162, 173 n.6 (5th Cir. 1998); *Murray,* at 282. Further, if Gatti fails to establish either prong of the *Strickland* test, then his claim of ineffective assistance of counsel must fail. *See Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997); *Bryant v. Scott*, 28 F.3d 1411, 1415 (5th Cir. 1994); *Williams v. Collins*, 16 F.3d 626, 631 (5th Cir. 1994).

1. **Defendant has failed to demonstrate "error" for all claims of ineffective assistance of counsel.**

In the present case, Gatti makes numerous claims of ineffective assistance of counsel, including (1) failure to object to the trial court's jury instruction placing the burden of persuasion on the defendant with respect to the defense of duress; (2) failure to appeal, as plain error, the trial court's jury instruction placing the burden of persuasion on the defendant with respect to the defense of duress; (3) failure to object to the prosecution's cross-examination of defendant with respect to his post-arrest silence; (4) failure to move to suppress Officer Willis' in-court identification of defendant; (5) failure to object to the prosecutor's comments on the defendant's exercise of his right to counsel; and (6) failure to object to the prosecutor alluding to testimony and evidence that was not adduced at trial. (Rec. Doc. 318, Claims 3-4, 5; Rec. Doc. 355, Claims 3, 5, 7, 10, 13, 15). In regard to these claims, Gatti cannot show prejudice—the result of the proceedings would not have been different. As discussed above, the jury instructions, the prosecutor's conduct, and the in-court identification were proper and permissible. *See infra.* Failing to make objections to such events throughout the trial was not error and therefore did not constitute ineffective assistance of counsel.

Gatti contends that his trial counsel was ineffective for failing to object to the prosecutor's request during cross-examination that the defendant wear the robbery mask. (Rec. Doc. 318, Claim

14

8). During the trial, there was considerable testimony that Gatti was wearing a ski mask with eye holes at the time of the robbery. During the government's cross-examination of defendant, the prosecutor asked Gatti to put on the ski mask and look at the jury. *See* Rec. Doc. 318, Claim 8. Gatti argues that the prejudicial effect of wearing the mask outweighed any probative value it may have had, and his trial counsel was ineffective for failing to object to this procedure.

Gatti has not established how this alleged failure was unreasonable or caused him any prejudice. It was not impermissible for the prosecutor to request, and for the trial court to allow, the defendant to put on the mask and look at the jury. *See U.S. v. Boudreaux*, 502 F.2d 557, 558-59 (5th Cir. 1974) (trial court did not err in admitting certain articles of clothing that were worn by defendants when arrested by police); *U.S. v. Roberts*, 481 F.2d 892 (5th Cir. 1973) (trial court did not err when ordering, at the government's request, defendant to put on the stocking mask worn during the robbery); *U.S. v. Valdez*, 456 F.2d 1140, 1142 (5th Cir. 1972) (trial court did not err in requesting defendant to put on blue jacket allegedly worn by him on date of his arrest).

Gatti argues that even if the individual errors are not prejudicial, that the cumulative effect of his counsel's errors constitutes ineffective assistance. (Rec. Doc. 355, Claim 16). As discussed above, Gatti's has failed to demonstrate error on the part of his trial counsel. Regardless, the Fifth Circuit has repeatedly held that "ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions." *U.S. v. Hall*, 455 F.3d 508, 520 (5th Cir. 2006); *see also Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000) (stating that in the absence of a specifically demonstrated error, a defendant cannot show that cumulative error of counsel deprived him of a fair trial). "Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Wesley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996), *cert.*

*denied*, 519 U.S. 1094, 117 S.Ct. 773 (1997).

## 2. Need for an evidentiary hearing.

28 U.S.C. § 2255(b) provides:

> Unless the motion and the files and records of the case *conclusively* show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

(Emphasis added). In other words, a § 2255 movant must be granted a hearing unless the records *conclusively* show that no relief will be accorded. The determination of whether to grant or deny a hearing involves two steps. First, the court must examine whether the record conclusively negates the factual predicates asserted in support of the motion for post-conviction relief.[4] Second, if those factual allegations are not conclusively negated, whether the movant would be entitled to post-conviction relief as a legal matter. *U.S. v. Alanis*, 88 Fed. Appx. 15, 19 (5th Cir. 2004); *Friedman v. U.S.*, 588 F.2d 1010, 1015 (5th Cir. 1979). If he would be entitled to relief, "the district court must conduct a hearing to ascertain the validity of the movant's factual assertions." *Alanis*, 88 Fed. Appx. at 19.

Gatti's remaining allegations of ineffective assistance of counsel are: (1) alluding to a "bogus

---

[4] § 2255 does not expressly authorize district judges to rely on their personal observations from trial. However, the Supreme Court has implied that district judges may draw upon their own personal knowledge or recollection in passing upon factual allegations in § 2255 motions that pertain to events over which they presided. *Friedman v. U.S.*, 588 F.2d 1010, n.7 (5th Cir. 1979); *Machibroda v. U.S.*, 368 U.S. 487, 494-95, 82 S.Ct. 510 (1962).

16

theory of defense" during opening statements;[5] (2) failure to offer expert testimony regarding Larry Thompson, Sr.'s over-bearing and controlling personality;[6] (3) failure to fully investigate Larry Thompson, Sr.'s reputation for violence and to present additional testimony concerning that reputation;[7] (4) representation of defendant despite an actual conflict of interest;[8] and (5) failure to appeal the error in the loss amount calculation.[9] *See* Rec. Doc. 318, Claims 6-7; Rec. Doc. 355,

---

[5]During opening statements, Gatti's counsel stated:

"Well, as soon as the police officers in the back yard who had told Regan to get down heard those shots, they started firing. And they hit him, they shot him. Did he shoot back? Yes. He ran to the back of the house, shooting as he was running, and then went inside the house."

(Trial Tr. p.13, l.20-25). Gatti claims that his counsel's assertion of self-defense conflicted with the defense theory of duress and that, even after this statement, his counsel advised him to testify that he did not shoot at the police officers. *See* Rec. Doc. 318, Claim 1; Rec. Doc. 355, Claim 2.

[6]At the trial of Larry Thompson, Jr., Dr. Mark Vigen, a psychologist, testified on Thompson, Jr.'s behalf. He stated that Larry Thompson, Sr. possesses a "classic psychopathic personality disorder" and that Thompson, Jr. had a good reason to believe that his father would kill him if he did not obey. Gatti contends that his counsel was ineffective for failing to retain Dr. Vigen or another expert who could offer similar testimony. *See* Rec. Doc. 318, Claim 7.

[7]Gatti claims that, prior to trial, he gave his counsel the names of numerous people who could testify as character witnesses with respect to Larry Thompson, Sr.'s character and reputation. Yet, he claims his counsel failed to conduct pre-trial investigations to gather information and evidence to support the defense and that his counsel failed to call or subpoena any witnesses who were willing to testify on his behalf. *See* Rec. Doc. 355, Claim 1.

[8]Gatti argues that his trial counsel had an "actual conflict of interest" because his counsel's firm also represented Tung Nguyen, who testified at the trial as a government witness. *See* Rec. Doc. 355, Claim 11.

[9]According to the pre-sentence report (PSR), which was adopted by the district court, the total loss amount was $822,753.25, which included $25,753.25 of worker's compensation payments and medical expenses associated with the Shreveport Police Department. Because the loss amount was between $800,000 and $1,500,000, Gatti's offense level was increased by four points. Gatti's counsel objected to the worker's compensation payments and medical expenses being included in this amount, but he failed to raise the issue on appeal. Gatti's co-defendants,

Claims 1, 2, 11, 17. As is often the case for claims of ineffective assistance of counsel, the record has not been fully developed to allow the court to address the merits of these allegations. Neither the § 2255 motion nor the record conclusively demonstrate that Gatti is *not* entitled to relief. Whether counsel's assistance was deficient in each of these claims depends on the advice given to Gatti before his testimony, the extent of his pre-trial investigation, whether his decision not to produce additional testimony was part of a sound trial strategy developed after a reasonable investigation, whether trial counsel's firm also represented a government witness at defendant's trial, and whether defendant would have prevailed on appeal if an objection to the "loss amount" had been made. Thus, an evidentiary hearing must be held so that the parties may present evidence and provide the court an opportunity to make an informed decision regarding these allegations of ineffective assistance of counsel.

## CONCLUSION

Because the record does not conclusively negate all claims for relief, the court orders an evidentiary hearing on which defendant must show cause as to why he is entitled to relief on the following claims of ineffective assistance of counsel: (1) alluding to a "bogus theory of defense" during opening statements; (2) failure to offer expert testimony regarding Larry Thompson, Sr.'s over-bearing and controlling personality; (3) failure to fully investigate Larry Thompson, Sr.'s reputation for violence and to present additional testimony concerning that reputation; (4) representation of defendant despite an actual conflict of interest; and (5) failure to appeal the error

---

Anthony Gentry and Larry Thompson, Sr., did raise the issue on appeal and their cases were remanded for re-sentencing. Gatti argues that his counsel's failure to raise the issue on appeal is ineffective assistance because he should have been granted a new sentencing hearing. *See* Rec. Doc. 355, Claim 17.

in the loss amount calculation. (Rec. Doc. 318, Claims 6-7; Rec. Doc. 355, Claims 1, 2, 11, 17).

All other claims for relief in defendant's motion are denied.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 3rd day of October, 2008.

_____
DONALD E. WALTER
UNITED STATES DISTRICT JUDGE